Erik LeRoy, P.C.
500 L St., Ste 302
Anchorage, Alaska 99501
telephone (907) 277-2006
facsimile   (907) 277-2243
leroy@alaska.com
Attorney for Appellant Evelyn Brown, trustee
for estate of Wassillie William Alexie

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| In re: )<br>)<br>ALLVEST, CORPORATION d/b/a/ )<br>ALLVEST  INC. )<br>)<br>      Debtor. )<br>_____) | Bankruptcy Case No. A02-01042-DMD<br><br>USDC Appeal No. 3:06-cv-00044 TMB |

**Appellant's Brief**

Table of Contents

Jurisdictional Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Issue Presented for Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    1. Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    2.    Since Brown's claim did not come into the estate by operation
        of law, and since it was not incorporated in the Settlement
        Agreement, Brown's claim is not owned by the bankruptcy
        estate and the bankruptcy court erred when it concluded that
        it is owned by the bankruptcy estate . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Table of Authorities

Cases

*Alaska Diversified Contractors, Inc. v. Lower Kuskokwim School District*, 778 P.2d 581 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Harris v. Ahtna*, 107 P.3d 271 (Alaska 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Daniels Head & Assoc.*, 819 F.2d. 914 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . 12

*In re Gosney*, 205 B.R. 418 (9th Cir. BAP 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*K & K Recycling v. Alaska Gold Co.* 80 P.3rd 702  (Alaska 2003) . . . . . . . . . . . . . . 12

*L.K. Comstock & Co. v. United Engineers & Construction* 880 F.2d 219 (9th Cir. 1989) 12

*McKinstry Co. v. Sheet Metal Workers' International*, 859 F. 2d 1382 (9th Cir. 1988) . 12

*NBA v. J.B.L. st. al.* 546 P.2d 579 (Alaska 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Sprucewood Investment v. Alaska Housing Finance Corp.* 33 P.3d 1156(Alaska 2001)13

Federal Statutes

28 U.S.C. §158(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Federal Rules of Bankruptcy Procedure

Fed. R. Bankr. P. 8002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Bankr. P. 8013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## Jurisdictional Statement

The district court has jurisdiction to hear an appeal from the bankruptcy court under 28 U.S.C. §158(a). The judgment appealed from was a final judgment disposing of all issues concerning Brown's ownership of a claim against the receiver of Classic Marine & Fire Insurance Company. The judgment appealed from was entered January 12, 2006. Appellant's Notice of Appeal was filed in the bankruptcy court on January 18, 2006, within the time allowed under Federal Bankruptcy Rule 8002.

## Statement of Issue Presented for Review

It is undisputed that appellant Brown did not assign to the Allvest bankruptcy trustee the claims she had filed in 1999 against the Receiver for Classic Fire & Marine Insurance Company. The bankruptcy trustee, the draftsman of Exhibit A to the Judgment (also known as the December 31, 2002 Settlement Agreement) approving a settlement, did not believe that the trustee had acquired Brown's claims in the December 31, 2002 Settlement Agreement. The question to be addressed by this court is whether or not the bankruptcy court's conclusion that Brown's claims were included in the December 31, 2002 Settlement Agreement was erroneous.

## Statement of the Case

In this case the bankruptcy judge was asked to determine whether a claim against the receiver of Classic Fire & Marine Insurance Company filed by Ms. Brown more than 2 years before Allvest's bankruptcy was filed had come into the bankruptcy estate either by operation of law, as the trustee believed, or contractually in the December 31,2002 Settlement Agreement, as JW Creditors may believe. The

bankruptcy court concluded that Brown's claim did not come into the bankruptcy estate by operation of law. That determination has not been appealed. However, the bankruptcy court also concluded that because the trustee believed that Brown's claim had come into the bankruptcy estate by operation of law, that Brown's claim did come into the bankruptcy estate through a December 31, 2002 Settlement Agreement between, on one side, the debtor, Allvest, and its principal, William Weimar, and on the other side, Ken Battley, Allvest's bankruptcy trustee, J.W. Creditors and Brown (Allvest's largest creditors). An evidentiary hearing was conducted on November 8, 2005 at which the bankruptcy court heard the testimony of the drafters of, and participants in, the December 31, 2002 settlement agreement and rendered the judgment from which Brown has appealed.

## Statement of Facts

In 1993 the debtor, Allvest, Inc. entered into an agreement with the Municipality of Anchorage to provide the city's Community Patrol Service. Allvest purchased liability insurance from Classic Fire & Marine with a $1 million limit for the year August 1, 1994 through July 31, 1995. Wassillie William Alexie was injured by Allvest's employees on July 16, 1995. (Mr. Alexie died as a result of the injuries he suffered and his estate is represented by Evelyn Brown.)

Allvest purchased liability insurance from Classic Fire & Marine with a $2 million limit for the year August 1, 1995 through July 31, 1996. J.L., B.P., K.S., C.W., A.W. and J.W. (Hereafter J.W. Creditors) were injured by the conduct of Allvest's employees between October 1, 1995 and June 1, 1996.

J.W. Creditors sued Allvest in 1997 and tried their case against Allvest in 2001 obtaining judgments against Allvest on April 3, 2001.  The judgments of J.W. Creditors totaled $58,090 of compensatory damages and $1,000,000 of punitive damages.

Brown sued Allvest in 1997 and obtained a judgment against Allvest on June 21, 2001 for $1,003,617.60 of past losses and interest and $2,000,000 of punitive damages.

On December 31, 1997, Classic Fire & Marine reported that liabilities which it had agreed to incurred through insurance contracts exceeded its assets.  A receiver of Classic Fire & Marine was appointed.

On November 17, 1999, Brown filed a $10 million claim with the receiver for Classic Fire & Marine based on her claims insured by the 1994 Policy.

On October 3, 2002, an involuntary petition in bankruptcy was filed against Allvest.  Litigation against Allvest's principals and agents was stayed and then transferred to bankruptcy court.  On December 31, 2002, Allvest, its principal, Bill Weimar, the trustee, Brown and J.W. Creditors agreed to a settlement approved by the Bankruptcy Court in a judgment which provided for: (i)  transfer of certain assets from Weimar to the bankruptcy estate, (ii) the payment by Weimar of all pre-petition creditors other than Brown and J.W. Creditors, (iii) the retention by the bankruptcy trustee of any insurance claims the estate had or could still assert, including any claims which Allvest could present to the Receiver of Classic Fire & Marine, (iv) the allocation of the dividends to be paid out of the bankruptcy estate, 47% to J.W. Creditors and 53% to Brown, and, (v) the dismissal of the J.W. Creditors and Brown adversary actions with prejudice. (Record, Volume One, DE 73.)

Attached to the December 31, 2002 Judgment was a document titled Exhibit A to Judgment Approving Settlement Agreement. This is what is referred to as the Settlement Agreement in the bankruptcy court's January 12, 2006 Memorandum Decision (Record, Volume One, DE 273). It defined Parties Released as including Weimar and his business entities other than the debtor. It defined Releasing Parties as Kenneth Battley, Brown and JW Creditors. Weimar was represented by Spencer Sneed. Bankruptcy trustee Ken Battley was represented by John Siemers. Paragraph 10 of Exhibit A recited:

> The bankruptcy estate will retain any insurance claims with respect to any insurance given in favor of Allvest as insured (or insurance of any nature may apply to underlying claims by J.W. et. al. and by Brown for the existing judgments held by these parties) and any claims associated with such insurance including claims against brokers, excess line carriers, receivers, or claims in insolvency proceedings for any insurance company.

All of the principal participants in the December 31, 2002 settlement testified at the November 8, 2005 evidentiary hearing on the meaning of the Settlement Agreement.

The trustee, Ken Battley, testified that on questions of what insurance claims were included in the settlement agreement, ". . . you'd have to defer to Mr. Siemers on that, because I really didn't focus on the insurance claims." (Record, Volume Two, Transcript at 133, lines 24-25)

The trustee's attorney, Mr. Siemers, the principal drafter of Exhibit A to the Judgment, testified that he did not believe Brown's claims were included in the Settlement, and that when he wrote in Exhibit A that the bankruptcy estate "will retain" whatever insurance claims Allvest had, he did not think that Brown's claims were part of

what the trustee retained. When asked about the specific language of Exhibit A Mr. Siemers testified:

>Q. I want you to look at page 5, the last paragraph. I want you to read the first sentence of that last paragraph on page 5.
>
>A. "The bankruptcy estate will retain whatever interest Allvest Inc. had in any right to indemnification or other recovery from any insurance company with respect to the tort claims asserted by J.W., et al., and by Brown."
>
>Q. All right. Now, you used the word -- the words "retain" and "had" in this. Were you careful when you selected those words in this sentence?
>
>A. Well, certainly by retaining, I'm referring to the status quo, that whatever the estate had, it will retain.
>
>Q. Does that also mean that it wasn't picking anything up into this settlement agreement that it did not have?
>
>A. Well, it certainly -- the text does not go beyond that, and, therefore, by implication, it's saying that the estate is not acquiring anything other than what it already had.

(Record, Volume Two, Transcript p. 25, lines 1-15)

>Mr. Siemers later elaborated on what he meant by "retain":
>
>Q.    All right. You intended that the trustee would retain whatever interest the estate had.
>
>A.    That's right, including any interest that the estate might've had by operation of law with respect to the Brown claim.
>
>Q.    But you did not intend to include in this a transfer of whatever claim Evelyn Brown had against the receiver as an assignment.
>
>A.    No. There's nothing in the text to say that -- that there would be an assignment of that claim to the estate by Brown.

(Record, Volume Two, Transcript page 35, lines 17-25 and page 36, lines 1-2)

Exhibit A contained a hand-written paragraph 17 which reads, in part,

The distribution of estate assets on account of general unsecured claims of JW et. al. and Evelyn Brown shall be as follows: 47% JW et al and 53% Brown . . . .

Mr. Siemers was asked whether he could find an assignment to the bankruptcy estate of Brown's claim in that paragraph 17 of Exhibit A.

Q.   Now, take a look at the handwritten paragraph 17 at the end of this exhibit A, which is our exhibit 2 in this hearing.

A.   I have that.

Q.   All right. It says the distribution of estate assets on account of general unsecured claims. I'm wondering what you mean or what is meant by estate assets here.

A.   Assets of the bankruptcy estate that it would require [sic] under 541 of the code.

Q.   And that would not include Evelyn Brown's claim against the receiver as having come into the estate by assignment.

A.   It would include the Evelyn Brown claim to the extent it was property of the estate under 541 by operation of law, but it would not have included the Evelyn Brown claim in any other mechanism, as, for example, by an assignment.

Q.   All right.

A.   There's no reference to an assignment in here.

Q.   Right. You -- but it's your position here that it's not property under [sic] the estate under that other road that we're traveling down, which is did it come into the estate by reason of this agreement.

A.   Well, look, I don't believe that I was present in every conversation that may have occurred between Brown and J.W. representatives, so all I know is that -- that I was not specifically told to put into these documents a reference to as [sic] contractual assignment, that is, a transfer of property rights of ownership, of the Brown claim from Brown to the estate; I was not told to do that.

(Record, Volume Two, Transcript, page 36, lines 1-16 and page 37, line 2-12)

*Brown v. J.W. et. al.* 3:06-cv-00044 TMB
page 6

Mr. Siemers was asked if he could find in the Findings of Fact (Record, Volume Three, exhibit 3) filed with the December 31, 2002 Judgment an assignment of Brown's claim to the bankruptcy estate:

> Q. Look at paragraph -- the last paragraph on page 2 of these findings. The first sentence, would you read that aloud?
>
> A. We're on the last paragraph?
>
> Q. The last paragraph of page 2.
>
> A. Page 2, findings and conclusions: "The settlement will provide for the transfer of assets and the payment of funds as specified in the attached settlement agreement."
>
> Q. All right. So did that include -- did that sentence, and to that extent, the settlement, include the claim that Don Bauermeister made against the receiver on behalf of Evelyn Brown?
>
> A. Well, not to my knowledge. I mean, I -- again, I was told that. I knew what it definitely included, which is the transfer of assets that were being made by William Weimar to the estate, to the trustee, as part of the settlement.

(Record, Volume Two, Transcript, page 37, line 18-25 and page 38, lines 1-8)

Mr. Siemers was asked whether an assignment by Brown of her receiver claim had been discussed in the meetings leading up to the December 31, 2002 settlement.

> Q. Was there any discussion as part of this basic deal that Brown would contribute whatever claim she had against the receiver to the bankruptcy estate?
>
> A. It wasn't my understanding, no, there -- there were no discussions to that effect.
>
> Q. Would you take a look at exhibit 1?
>
> A. I do have to qualify one statement. With respect to the claim that Brown had asserted in the insolvency proceedings in Indiana, I did state to Don Bauermeister, Brown's counsel, that I was certainly reserving the right

*Brown v. J.W. et. al.* 3:06-cv-00044 TMB
page 7

>    on behalf of the trustee to assert whatever interest the estate might have
>    as -- by operation of law in that claim or in the policy.
>
>    Q.    So then you had a specific discussion with Don about not taking
>    whatever claim he had in the insolvency by an assignment in these
>    settlement documents.
>
>    A.    But I don't think I was really -- we were ever really asking for the
>    claim to be assigned, but what I wanted to make sure was the estate
>    reserve whatever right it might have in the insurance policy and the claim
>    against the receiver.
>
>    Q.    Okay.
>
>    A.    So to would retain whatever that was.

(Record, Volume Two, Transcript page 24, lines 1-23)

Mr. Siemers was not told by anyone that it was a element of the settlement that Brown would assign her receiver claim to the trustee.

>    Q.    Did anyone tell you that it was also part of that agreement that
>    Brown would contribute any claim she had or was asserting against the
>    receiver to the bankruptcy estate?
>
>    A.    There was nothing that I was aware of to indicate that there was to
>    be an assignment of that claim to the trustee.

(Record, Volume Two, Transcript page 33, lines 23-25 and page 34, lines 1-2)

Mr. Siemers not only testified that the Brown claim had not come into the estate in the Settlement Agreement by an assignment, but that he knew that Brown maintained that the receiver claim she filed was hers, not the bankruptcy estate's.  When asked about hearing Exhibit 8, (Record, Volume Three, exhibit 8) a draft of a letter he had shared with Mr. Bauermeister in June, 2003, Mr. Siemers acknowledged that he knew that Brown was prosecuting her claim against the receiver.

>    Q.    All right. But the rest of it is an acknowledgment that Brown

*Brown v. J.W. et. al.* 3:06-cv-00044 TMB
page 8

> maintained that she has this claim.
>
> A.  Brown maintained a claim to those proceeds and then the trustee maintained a claim to those proceeds.
>
> Q.  All right. So in June of 2003, it's still your position that that Brown claim was not given up in the settlement agreement.
>
> A.  Yeah. At that point in time, my understanding of the situation was that that had not occurred and that the estate's claim was the one that I have asserted in the briefing I filed to the court, that the claim was property of the estate by operation of law.

(Record, Volume Two, Transcript, page 45, lines 8-15)

At the conclusion of the evidentiary hearing Mr. Siemers articulated the trustee's distinction as to how the Brown claim might have come into the bankruptcy estate:

> MR. SIEMERS: Your Honor, I just wanted to remind the Court that the Court really has to address two issues in order to rule in favor of Brown. The one issue is the one that Mr. -- that J.W. is disputing about whether there was an agreement that made the Brown claim assets of the estate. If the Court rules in favor of Brown on that, it would have to address the second issue, which has been raised by the trustee, which is that the Brown claim, by operation of law, the right to be paid on the policy and by the receiver, is property of the estate. I just wanted to make sure the Court didn't lose sight of that in taking this matter under consideration.  Thank you.

(Record, Volume Two, Transcript, page 140, lines 15-25 and page 141, line 1)

Mr. Sneed, Allvest and Bill Weimar's lawyer, was the other drafter of Exhibit A. He did not believe the Brown claim was included in the settlement.

> Q.  At any meeting that you attended, was there any discussion about J.W. or Brown conveying any insurance rights that they had into the bankruptcy estate?
>
> A.  No, not that -- not that I recall. I -- I -- no.
>
> Q.  Did anyone tell you at any of these meetings or after any of these meetings or when you were participating in the drafting of these

page 9

agreements that Brown's claim against the receiver had been assigned to or would be administered by the bankruptcy estate?

A.   No.

(Record, Volume Two, Transcript, page 10, lines 8-17)

Mr. Bauermeister, Brown's lawyer, testified first by affidavit that in none of the meetings leading to the December 31, 2002 settlement hearing was he ever asked to assign Brown's claim to the bankruptcy estate:

7.   At no point was there any request that my client, Mrs. Brown, assign any separate interest she might have against the receiver in Indiana for insurance payments resulting from the claim my office had filed with the Indiana receiver.

8.   I was never approached and asked to make a written assignment of such claim and never did so.

9.   I was never approached and asked to make an oral assignment of such claim and never did so.

(Record, Volume One, exhibit one to DE 219)  The bankruptcy court acknowledged Mr. Bauermeister's affidavit testimony and found no fact disputing that testimony.  (Record, Volume One, DE 273, pages 15-16)

At the hearing, Mr. Bauermeister reiterated this testimony:

Q.   Okay. Did -- at this -- at these meetings in either Mr. Siemers's or Mr. Sneed's office, did anyone ask you to make an oral assignment of the claim that you had filed to the trustee?

A.   No.

Q.   Anyone ask you to make a written assignment of the claim you had filed with the receiver to the trustee?

A.   No.

(Record, Volume Two, Transcript page 83, lines 23-25 and page 84, lines 1-5)  There

was no cross-examination of Mr. Bauermeister.

Three of J.W.'s attorneys testified at the hearing. None of them testified that Brown had agreed to convey her interests to the trustee.

Mr. Syren, one of J.W.'s lawyers, agreed that Brown did not formally assign her interest to the bankruptcy estate, but also believed that her claim nevertheless was in the bankruptcy estate.

> Q. Did you ever ask Mr. Bauermeister, you are of course assigning your claim against the receiver to the trustee?
>
> A. I didn't know that was even necessary. I thought we all had one big pot there.
>
> Q. No. Was there a -- if you don't recall it, then you don't recall it, but was there a discussion in these meetings about Evelyn Brown's claim against the receiver?
>
> A. Well, I know we talked -- I know the -- the general assumption that I had, that -- that I think everybody had at this meeting was that we had the bankruptcy estate owned this-- the insurance claims, that those assets were -- were part of the bankruptcy estate, that they were all being pooled together to make a giant pot that we were all going to just split.
>
> Q. But no one told [sic] that Evelyn Brown's claim was part of the bankruptcy estate?
>
> A. I think we all just knew that.

(Record, Volume Two, Transcript, page 109, lines 11-14, and page 110, lines 5-13)

Mr. Cook, also a J.W. attorney, testified only that Brown had never expressed that she was reserving her claims against the receiver. (Record, Volume Two, Transcript page 99, lines 19-21)

Mr. Von Gemmingen, also a J.W. attorney, similarly testified that Brown had never expressed that she was reserving her claims against the receiver (Record,

Volume Two, Transcript page 119, lines 15-23) but he also acknowledged that Mr. Bauermeister had never told anyone that he would assign his claims to the trustee (Record, Volume Two, Transcript page 120, lines 19-21).

## Summary of Argument

The bankruptcy court was wrong when it concluded that Brown's claim came into the bankruptcy estate in the Settlement Agreement contained in Exhibit A because the trustee believed (erroneously) that it had come into the bankruptcy estate as a matter of law. The drafters of Exhibit A were unanimous in their testimony that Brown's claim did not come into the bankruptcy estate by reason of Exhibit A.

## Argument

### 1. Standard of Review

When a district court or circuit court reviews a decision of a bankruptcy court, it reviews the factual findings for clear error and its legal conclusions de novo. Fed. R. Bankr. P. 8013; *In re Daniels Head & Assoc.*, 819 F.2d. 914, 918 (9th Cir. 1987). *In re Gosney*, 205 B.R. 418, 420 (9th Cir. BAP 1996). A bankruptcy court's interpretation of a contract is reviewed de novo. *L.K. Comstock & Co. v. United Engineers & Construction* 880 F.2d 219, 231 (9th Cir. 1989); *McKinstry Co. v. Sheet Metal Workers' International*, 859 F. 2d 1382, 1385 (9th Cir. 1988). Under Alaska law, as under federal law, the interpretation of contract language is a question of law. *K & K Recycling v. Alaska Gold Co.* 80 P. 3rd 702,    (Alaska 2003); *Sprucewood Investment v. Alaska Housing*

Brown v. J.W. et. al. 3:06-cv-00044 TMB
page 12

*Finance Corp.* 33 P.3d 1156, (Alaska 2001) *Citing Alaska Diversified Contractors, Inc. v. Lower Kuskokwim School District*, 778 P.2d 581, 584 (1989) "Where there is no conflicting evidence of the parties intent . . . 'questions of interpretation of the meaning of written documents are treated as questions of law.'"

The Alaska Supreme Court's most recent application of this standard in a contact case was *Harris v. Ahtna*, 107 P.3d 271, 274 (Alaska 2005).

> The goal in interpreting the meaning of contracts is to give effect to the reasonable expectation of the parties. Reasonable expectations may be ascertained through the language of the contract, the behavior of the parties, case law, and any relevant extrinsic evidence. Ordinarily the meaning of a contract presents a question of law for the trial court, reviewable on appeal under the independent judgment standard unless there is conflicting extrinsic evidence. Where there is conflicting extrinsic evidence, findings and inferences of fact made by the trial court will be reviewed deferentially under the clearly erroneous standard.

Where, as here, there is no factual dispute concerning the meaning intended by the drafters of the contract, the applicable standard of review is the de novo standard.

> Since there is no basic factual dispute concerning the surrounding circumstances, the questions pertaining to the meaning of contract terms are treated in the same manner as questions of law, and we are not bound by the "clearly erroneous" standard.

*NBA v. J.B.L. st. al.* 546 P.2d 579, 592 (Alaska 1976).

> ***2. Since Brown's Claim did not come into the estate by operation of law, and since it was not incorporated in the Settlement Agreement, Brown's claim is not owned by the bankruptcy estate, and the bankruptcy court erred when it concluded that it is owned by the bankruptcy estate***

Brown filed a claim against the receiver of Classic Marine & Fire in 1999. No other party or creditor in the Allvest bankruptcy filed any claim against the receiver

*Brown v. J.W. et. al.* 3:06-cv-00044 TMB
page 13

based upon Brown's judgment against Allvest. Neither Exhibit A, the Settlement Agreement (Record, Volume One, DE 73), or the Finding of Fact and Conclusions of Law (Record, Volume Three, exhibit 3) contain an assignment from Brown to the trustee of her claim against the insurance receiver. How then could Brown's claim have become an asset of the Allvest bankruptcy estate?

First, Brown's claim could have been in the bankruptcy estate all along, as the trustee advocated, because it belonged to the bankruptcy estate as a matter of law. The bankruptcy court rejected this position and that decision has not been appealed. (Record, Volume One, DE 273, page 10)

Second, Brown's claim could have been contributed or assigned by Brown to the bankruptcy estate in the negotiations leading up to the December 31, 2002 hearing, settlement and judgment. But Don Bauermeister, Brown's attorney, testified that he was not asked to contribute it and did not assign it. (Record, Volume One, exhibit 1 to DE 219, and Volume Two, Transcript page 83, lines 23-25 and page 84, lines 1-5) Mr. Bauermeister was not cross-examined. The bankruptcy court did not find Mr. Bauermeister's affidavit or testimony not credible. None of the other witnesses at the November 8, 2005 hearing contradicted Mr. Bauermeister's testimony. John Siemers and Spencer Sneed, the drafters of Exhibit A testified that Brown's claim wasn't included in the settlement agreement. (Record, Volume Two, Transcript page 36, lines 1-16 and page 37, lines 2-12 (Siemers) and page 10, lines 8-17 (Sneed)) None of the other witnesses at the November 8, 2005 hearing contradicted Mr. Siemers' or Mr. Sneed's testimony. None of J.W. creditors' witnesses testified that the assignment of

Brown's claim had been discussed in the meetings leading up to the consummation of the settlement at the December 31, 2002 hearing.  They testified only that Mr. Bauermeister never told anyone he was reserving the Brown claim or not assigning it.  Mr. Syren best described J.W. Creditors' attorneys thoughts:

> . . . the general assumption that I had, that – I think everybody had at this meeting was that we had the bankruptcy estate owned this – the insurance claims, that those assets were – were part of the bankruptcy estate. . . .

(Record, Volume Two, page 109, lines 11-14 and page 110, lines 5-13)

So, again, given this unanimity of testimony from the drafters of the Exhibit A and Mr., Bauermeister that the Brown claim was not included in the settlement, the absence of any evidence contradicting that testimony, how did the bankruptcy court conclude that the Brown claim was included in the settlement?  The bankruptcy court found that the Brown claim was included in the settlement agreement ". . . because the trustee believed at the time the agreement was negotiated that he held the insurance claim by operation of law."  Memorandum Decision at 18.  But he didn't.  The bankruptcy court determined that the insurance claims were not owned by the bankruptcy estate as a matter of law.   Because the trustee believed that the claims were owned by the bankruptcy estate as a matter of law is not a legally sufficient basis for the bankruptcy court to conclude that even though there was no understanding among the participants that Brown's claim would be contributed, it never the less was contributed.  The trustee's attorney, Allvest's attorney and Brown's attorney didn't believe the claim had been assigned.  J.W. Creditors may have assumed that Brown's claim had been assigned, but acknowledged that the issue was never discussed.

*Brown v. J.W. et. al.* 3:06-cv-00044 TMB
page 15

The bankruptcy court's conclusion that the Settlement Agreement "meant what it said" (Record, Volume One, DE 273, page 18) and that it meant that Brown's claim had been contributed, was erroneous in light of the plain meaning of the operative word "retain" and the unanimous testimony of the drafters of the Settlement Agreement that it was not intended that Brown's claim would come into the estate through the Settlement Agreement. The bankruptcy court's conclusion on the meaning of the contract is reviewed de novo by this court.

### Conclusion

The Exhibit A contract provided that the trustee would retain insurance claims. The plain meaning of the word retain is that the trustee would keep what he already had but that no further interests would be conferred upon him. This is what Mr. Siemers, the author of this provision, testified he intended this word to mean. There is no extrinsic evidence which contradicts Mr. Siemers testimony, or Mr. Sneed's testimony or Mr. Bauermeister's testimony that Brown's claim was not included in the Settlement Agreement.

Dated March 23, 2006.                    Erik LeRoy, P.C.
                                         Attorney for Appellant Evelyn Brown

                                         */s/ Erik LeRoy*

                                         Erik LeRoy, P.C.
                                         500 L St., Ste 302
                                         Anchorage, Alaska 99501
                                         (907) 277-2006

Certificate of Service

I certify that on March 23, 2006, a copy of this pleading was served on

Pat Gilmore
Don Bauermeister
John Siemers

Brett Von Gemmingen
637 W 3rd Ave.
Anchorage, AK 99501

Steve Shamburek
425 G St., Ste 630
Anchorage, AK 99501

Dylan Buchholdt
600 Barrow St, Ste 402
Anchorage, AK 99501

John Ruebelmann
Asst U S Trustee
605 W 4th Ave., Ste 258
Anchorage, AK 99501

by first class mail if an address in indicated above, or by electronic means through the ECF system as indicated on the Notice of Electronic Filing.


Erik LeRoy

*/s/ Erik LeRoy*