Steven J. Shamburek, Esq.
Law Office of Steven J. Shamburek
425 G Street, Suite 630
Anchorage, Alaska 99501
Telephone:  907-522-5339
Facsimile:  907-522-5393
Email:  shambureklaw@gci.net

Co-Counsel for Appellees,
J.W., B.P., K.S., C.W. and A.W.

Brett von Gemmingen, Esq.
Law Office of Brett von Gemmingen
637 W. Third Avenue
Anchorage, Alaska  99501
Telephone:  907-278-5935
Facsimile:  907-278-2532
Email:  bvglaw@gci.net

Co-Counsel for Appellees,
J.W., B.P., K.S., C.W. and A.W.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| In re: | ) |
| | ) |
| ALLVEST CORPORATION d/b/a | ) |
| ALLVEST INC. | ) Bankruptcy Case No. A02-01042-DMD |
| | ) |
| Debtor. | ) USDC Appeal No. 3:06-cv-00044 TMB |
| | ) |

**APPELLEES' BRIEF**

1

**TABLE OF CONTENTS**

Standards of Appellate Review. . . . . . . . . . . . . . . . . 3

Statement of the Case. . . . . . . . . . . . . . . . . . . . . 4

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A.   The Settlement Agreement Specifically Identifies the Insurance Claims as Part of the Settlement Fund 4

    B.   Brown Agreed to Look Exclusively to the Settlement Fund for Payment of the Judgment. . . . . . . . . . . 7

    C.   The Extrinsic Evidence Does Not Support Brown's Position. . . . . . . . . . . . . . . . . . . . . . . 9

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . 10

**TABLE OF AUTHORITIES**

**Cases**

Dandridge v. Williams, 397 U.S. 471 (1970). . . . . . . . . . . 3

Exxon Corp. v. State, 40 P.3d 786 (Alaska 2001). . . . . . . . 9

Ford v. Ford, 68 P.3d 1258 (Alaska 2003). . . . . . . . . . . . 3

Greater Anchorage Area Borough v. City of Anchorage, 504 P.2d 1027 (Alaska 1972). . . . . . . . . . . . . . . . . . 7

Harris v. Ahtna, 107 P.3d 271 (Alaska 2005). . . . . . . . . . 3

Murphy v. Murphy, 812 P.2d 960 (Alaska 1996). . . . . . . . . . 7

Nevada v. United States, 463 U.S. 110 (1983). . . . . . . . . . 3

Peterson v. Interocean Ships, Inc., 823 F.2d 334 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Still v. Cunningham, 94 P.3d 1104 (Alaska 2004). . . . . . . . 9

**Federal Statutes**

11 U.S.C. Sec. 726(b). . . . . . . . . . . . . . . . . . . . . 5

**STANDARDS OF APPELLATE REVIEW**

The present appeal asks this court to determine whether the bankruptcy court's application of extrinsic evidence to a settlement agreement "was erroneous." Appellant's Brief at p. 1. The bankruptcy court had earlier determined that the extrinsic evidence did not warrant an interpretation of the Settlement Agreement that was different than its plain meaning. (Record, Volume I, DE 273 at p. 18). Settlement agreements are analyzed under traditional contract principles. Ford v. Ford, 68 P.3d 1258, 1263 (Alaska 2003). Under traditional contract principles, the bankruptcy court's findings regarding the various pieces of conflicting extrinsic evidence are "reviewed deferentially under the clearly erroneous standard." Harris v. Ahtna, 107 P.3d 271, 274 (Alaska 2005).

"The prevailing party may, of course, assert in [this court] any ground in support of [its] judgment, whether or not that ground was relied upon or even considered by the trial court." Dandridge v. Williams, 397 U.S. 471, 475 n.6 (1970). Peterson v. Interocean Ships, Inc., 823 F.2d 334, 336 n.4 (9th Cir. 1987); Nevada v. United States, 463 U.S. 110, 129-130 (1983) ("when a final judgment has been entered on the merits of a case, '[i]t is a finality as to the claim or demand in controversy, including parties and those in privity with them, not only as to every other matter which is offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which

might have been offered for that purpose.'")

## STATEMENT OF THE CASE

The present appeal arises from a settlement agreement that was entered into in December of 2002. (Record, Volume I, DE 73). More than two years after the Settlement Agreement was signed one of the parties, Evelyn Brown (hereinafter "Brown"), filed a motion asserting a competing interest in one of the assets identified in the Settlement Agreement. (Record, Volume I, DE 207). The bankruptcy court, which oversaw the original Settlement Agreement, concluded that the challenged asset, an insurance claim, was part of the settlement fund and was subject to the agreed upon split between the parties. (Record, Volume I, DE 273). Brown has appealed that decision. (Record, Volume I, DE 276).

## ARGUMENT

**A. The Settlement Agreement Specifically Identifies the Insurance Claims as Part of the Settlement Fund.**

The insurance claim that is at issue in this appeal arises from the failure of Allvest, Inc.'s insurer, Classic Fire and Marine Insurance Company (hereinafter "Classic"), to pay a judgment obtained by Brown against Allvest, Inc. (Record, Volume I, DE 273 at p. 2). At the time the Brown judgment was entered, Classic was involved in insolvency proceedings in the state of Indiana and was unable to pay the judgment. (Record, Volume I, DE 273 at p. 2). Allvest, Inc. also did not pay the judgment and in October of 2002, Brown filed an involuntary bankruptcy

4

petition against Allvest, Inc. (Record, Volume I, DE 273 at p. 2). Thereafter, Brown and other creditors negotiated a settlement agreement that created a settlement fund to be administered by the bankruptcy trustee and provided for a distribution to creditors that was different than the pro-rata formula provided for in 11 U.S.C. section 726(b). (Record, Vol. I, DE 273 at p. 13).

The bankruptcy trustee believed that the insurance claims filed in Classic's insolvency proceeding in Indiana were part of the bankruptcy estate. (Record, Volume I, DE 273 at p. 3). Other creditors also believed that the insurance claims were discussed during the settlement process and included within the bankruptcy estate as a result of the express language of the Settlement Agreement. (Record, Volume II, DE 287 at p. 115, l. 17 - p. 116, l.10, p. 120, l. 14 - 23, p. 129, l. 5 - p. 131, l. 9; Record, Volume IV, Ex. D). Paragraph ten of the Settlement Agreement provides, in pertinent part, that:

> The Trustee will retain any insurance claims with respect to any insurance given in favor of Allvest as insured (or insurance of any nature [sic] may apply to underlying claims by J.W. et al. and by Brown for the existing judgments held by these parties) and any claims associated with such insurance including claims . . . in insolvency proceedings.

(Record, Volume I, DE 73 at pp. 5-6).

There is no dispute that the insurance claim that Brown now seeks to strip from the bankruptcy trustee is for insurance that applies to the underlying claim by Brown against Allvest, Inc.

5

for the existing judgment held by Brown against Allvest, Inc. Accordingly, that insurance claim is expressly identified in the Settlement Agreement as an asset to be administered by the bankruptcy trustee as part of the settlement fund. Brown will receive 53% of that claim with the remaining amount to be paid to the other creditors. (Record, Volume I, DE 73).

There is also no dispute that Brown waited until after the Settlement Agreement was signed, approved by the bankruptcy court, and relied upon by all of the other parties before challenging the bankruptcy trustee's assertion that the insurance claim was part of the bankruptcy estate. Brown has never filed a motion for relief from stay seeking bankruptcy court approval to pursue an asset that the bankruptcy trustee asserts is property of the estate. Instead, Brown waited for more than two years after the Settlement Agreement was approved by the bankruptcy court before seeking a declaration that the insurance claim was not property of the estate. (Record, Volume I, DE 207).

Whether the bankruptcy trustee's pre-Settlement Agreement assertion that it retained the insurance claims as property of the estate was correct is irrelevant. What is relevant is that the trustee's assertion was reduced to writing and agreed to by all of the parties. The other creditors relied upon the assets contained within the settlement fund and contributed valuable assets seized from non-debtor entities to help form the settlement fund. (Record Volume I, DE 207 at pp. 4-5; Record

6

Vol. IV, Exs. B, C and E). Brown received the benefit of those assets contributed by other creditors. (Record, Volume I, DE 73). Brown's assertion that the one asset it arguably had a competing interest in should be now excluded from the settlement fund threatens to unwind the entire basis for the Settlement Agreement.

"Sound judicial policy dictates that private settlements and stipulations between the parties are to be favored and should not be lightly set aside." <u>Greater Anchorage Area Borough v. City of Anchorage</u>, 504 P.2d 1027, 1031 (Alaska 1972); <u>see also</u> <u>Murphy v. Murphy</u>, 812 P.2d 960, 965 (Alaska 1996). It does not make sense, more than three years after the Settlement Agreement was approved and relied upon by the parties, to consider stripping assets from the Settlement Agreement simply because one party is dissatisfied with the amount of money it is scheduled to receive under the Settlement Agreement. The Settlement Agreement specifically identifies the insurance claim that applies to Brown's judgment against Allvest, Inc. as a part of the settlement fund. The bankruptcy court was absolutely correct in concluding that the Settlement Agreement means what is says and the assets identified as part of the settlement fund should remain within the settlement fund. (Record, Volume I, DE 273 at p. 18).

**B. Brown Agreed to Look Exclusively to the Settlement Fund for Payment of the Judgment.**

In addition to the plain meaning of paragraph ten of the Settlement Agreement are the provisions of paragraph

7

seventeen of the Settlement Agreement regarding payments to creditors. (Record, Volume I, DE 73). The bankruptcy court has noted that there is no provision allowing any creditor, including Brown, to receive payment on their judgments outside of the settlement fund. (Record, Volume I, DE 273 at p. 14). That finding by the bankruptcy court has not been appealed by Brown.

Brown has asserted that the insurance claim may be worth as much as ten million dollars. Appellant's Brief at p. 3. Brown's interpretation of the Settlement Agreement would allow Brown to receive as much as ten million dollars in payment of its three million dollar judgment without having to repay to the bankruptcy estate any of the money it had already received from the settlement fund. Appellant's Brief at p. 3. Brown's interpretation of the Settlement Agreement would also require the bankruptcy trustee to continue to pay Brown from the settlement fund even if Brown had already been fully paid from the insurance claim. (Record, Volume I, DE 273 at p. 14). The end result of Brown's interpretation of the Settlement Agreement is that other creditors could receive less than full payment on their judgments while Brown receives payment on her judgment multiple times over the judgment amount.

"In interpreting a contract, courts should 'interpret the contract in a manner that makes the contract internally consistent.'" <u>Exxon Corp. v. State</u>, 40 P.3d 786, 795 (Alaska 2001)(Footnote omitted). The bankruptcy court correctly

8

concluded that Brown's interpretation of the Settlement Agreement rendered the contract internally inconsistent. If Brown thought that she had a superior right to the insurance claim, she should have asserted that right in court before the Settlement Agreement was approved by the bankruptcy court. If Brown thought that she could look outside of the settlement fund for payment of her judgment, she should have identified those outside sources so that the Settlement Agreement could provide for payment from those outside sources and the bankruptcy trustee and other creditors could evaluate Brown's claim to payment from those outside sources. Instead, Brown quietly accepted the benefits of the Settlement Agreement for over two years before asking the bankruptcy court to approve of her allegedly competing claim to a settlement fund asset. As a result of Brown's inaction, the Settlement Agreement is now inconsistent with the position that Brown now asserts in this appeal.

**C. The Extrinsic Evidence Does Not Support Brown's Position.**

The bankruptcy court concluded that the Settlement Agreement is an integrated agreement. (Record, Volume I, DE 273 at pp. 11-13). That finding has not been challenged by Brown. Once an agreement is found to be integrated, it cannot be varied by prior negotiations or agreements. Still v. Cunningham, 94 P.3d 1104, 1109 (Alaska 2004).

Despite this well settled legal principle, Brown continues to insist that the court should look at the parties' prior

negotiations. When those negotiations are examined, it is evident that there is conflicting evidence. The bankruptcy trustee believed that the insurance claims were already part of the estate by operation of law prior to the execution of the Settlement Agreement. (Record, Volume II, DE 287, at p. 36, l. 3 - p. 37 l. 12). Brown believed that there needed to be a specific assignment before her competing insurance claim could be acquired by the bankruptcy trustee. (Record, Volume I, Ex. 1 to DE 219). The other creditors believed that the Brown insurance claim was specifically discussed in the settlement negotiations and included in the settlement fund. (Record, Volume II, DE 287 at p. 115, l. 17 - p. 116 l. 10, p. 120, l. 14-23, p. 129, l. 5 - p. 131, l. 9; Record, Volume IV, Ex. D). Given the conflicting beliefs of the parties, it is not surprising that the bankruptcy court failed to find sufficient extrinsic evidence to ignore the plain meaning of the Settlement Agreement.

Whether the bankruptcy court specifically mentioned all of the conflicting evidence in its decision is also irrelevant. The bankruptcy court's decision can be upheld by any evidence in the record, even if it is not specifically mentioned in the court's decision.

## CONCLUSION

The Settlement Agreement at issue in this appeal ended multiple lawsuits in several different forums. Since 2002, the bankruptcy court has been overseeing the settlement of the issues

10

that led to the formation of the Settlement Agreement and the administration of the settlement fund that was created by the Settlement Agreement.  The bankruptcy court has sided with those creditors who were unaware of Brown's claim upon an asset within the settlement fund.  The bankruptcy court's decision is not clearly erroneous and should be upheld by this court.

    Dated this May 5, 2006 at Anchorage, Alaska.

                  Steven J. Shamburek, Esquire
                  Co-Counsel for Appellees,
                  J.W., B.P., K.S., C.W. and A.W.

                  /s/ Steven J. Shamburek

                  Steven J. Shamburek, Esquire
                  Law Office of Steven J. Shamburek
                  425 G Street, Suite 630
                  Anchorage, Alaska 99501
                  Telephone:  907-522-5339
                  Facsimile:  907-522-5393
                  Email:  shamburek@gci.net
                  ABA No. 8606063

**Certificate of Service**

I certify that on the 5th day of May 2006, a copy of Appellees' Brief was served on:

Erik LeRoy

by electronic means through the ECF system as indicated on the Notice of Electronic Filing.


/s/ Steven J. Shamburek

Steven J. Shamburek