Erik LeRoy, P.C.
500 L St., Ste 302
Anchorage, Alaska 99501
telephone (907) 277-2006
facsimile   (907) 277-2243
leroy@alaska.com
Attorney for Appellant Evelyn Brown, trustee
for estate of Wassillie William Alexie

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| In re: ) <br> ) <br> ALLVEST, CORPORATION d/b/a/ ) <br> ALLVEST  INC. ) <br> ) <br> Debtor. ) <br> _____) | Bankruptcy Case No. A02-01042-DMD <br><br> USDC Appeal No. 3:06-cv-00044 TMB |

**Appellant's Reply Brief**

Table of Contents

1. The standard of review is de novo. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

2. The Settlement Agreement discusses insurance claims
   but does not identify Brown's claim and contains no assignment
   of Brown's claim to the trustee. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

3. Brown did not agree to look exclusively to the Settlement Agreement. . . . . . . 7

4. Brown is not looking to extrinsic evidence to 'go behind'
   the Settlement Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

   Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Table of Authorities

Cases

*Alaska Diversified Contractors, Inc. v. Lower Kuskokwim Sch. Dist.,*
778 P.2d 581 (Alaska 1989)       . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Harris v. Athna, Inc.* 107 P.3d 271(Alaska 2005)       . . . . . . . . . . . . . . . . . . . . . . 6

*In re Whigham* 195 B.R. 667 (D.Ct. E D Mich 1996)       . . . . . . . . . . . . . . . . . . . . 6

*Lower Kuskokwim Sch. Dist. v. Alaska Diversified Contractors, Inc.*
734 P.2d 62 (Alaska 1987)       . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*McCall-Bey v. Franzen*, 777 F.2d 1178 (7th Cir. 1985)       . . . . . . . . . . . . . . . . . . 6

*Smalley v. Juneau Bldg Corp.* 493 P.2d 1296(Alaska 1972)       . . . . . . . . . . . . . 6

**1.     The standard of review is de novo.**

"Questions of interpretation of the meaning of written documents are treated as questions of law for the court except where they are dependant for their resolution on conflicting extrinsic evidence." *Alaska Diversified Contractors, Inc. v. Lower Kuskokwim Sch. Dist.,* 778 P.2d 581, 584 (Alaska 1989). *If* the appellate court must assess conflicting extrinsic evidence in order to interpret the language of the contract, then the appellate court gives deference to the trial court's interpretation of that conflicting evidence. Here, interpretation of the contract not only does not require assessment of conflicting extrinsic evidence, but, the one piece of extrinsic evidence which JW Creditors allege is conflicting is unhelpful in reaching an understanding of the meaning of the Settlement Agreement.

Before this Court is the question of whether the following clause in the Settlement Agreement includes Brown's claim against the receiver of Classic Fire & Marine:

> The bankruptcy estate will retain any insurance claims with respect to any insurance given in favor of Allvest as insured . . . .

Here there is no conflicting extrinsic evidence as to the following facts:

- No one asked Brown to assign her claims against the receiver to the bankruptcy estate.

- There was no discussion of Brown contributing her claim to the bankruptcy estate in the meetings leading up to the December 31, 2002 Settlement.

- Brown did not assign her claims against the receiver to the bankruptcy trustee.

- The bankruptcy trustee thought that Brown's claims had come into the estate by operation of law (which the bankruptcy court determined did not happen).

Appellant Brown's Reply Memorandum
*Brown v. J.W. et. al.* 3:06-cv-00044 TMB
page 1

- The bankruptcy trustee did not believe that Brown's claims came into the estate in the Settlement Agreement.[1]

The extrinsic evidence which JW Creditors believe is conflicting is simply not relevant to the interpretation of the meaning of the Settlement Agreement and is not admissible to vary the terms of the contract.[2]  JW Creditors rely upon the testimony of Brett Von Gemmingen to establish, here, that "the insurance claims were discussed during the settlement process and included within the bankruptcy estate as a result of the express language of the Settlement Agreement."  Appellee's Brief at 5.  Mr. Von Gemmingen's testimony, however, was his recollection of bankruptcy trustee Ken Battley's comments in a meeting prior to the hearing approving the Settlement Agreement.  Mr. Von Gemmingen testified that he recalled Mr. Battley telling the meeting that he estimated that he could recover $440,000 from the JW Creditors and Brown claims against the receiver.  Mr. Battley's notes from that meeting were admitted in evidence and are at Record, Volume IV, Ex. D.  Mr. Von Gemmingen testified that he recalled that Mr. Battley had explained that he started with the compensatory claims of

---

[1] John Seimers testimony, Record, Volume Two, Transcript, page 24, lines 1-23. Don Bauermeister testimony, Record, Volume One, exhibit 1 to DE 219 and Record, Volume Two, Transcript, page 83, lines 23-25. Spencer Sneed testimony, Record, Volume Two, Transcript, page 10, lines 8-17. Les Syren testimony, Record, Volume Two, Transcript, page 109, lines 11-14 and page 100, lines 5-13.  Brett Von Gemmingen testimony, Record, Volume Two, Transcript, page 119, lines 19-23.

[2] The bankruptcy court found that the Settlement Agreement was an integrated document.  (Record, Volume One, DE 273, p12.)  If it is an integrated document, then whatever it means cannot be varied by prior negotiations or agreements.  *Lower Kuskokwim Sch. Dist. v. Alaska Diversified Contractors, Inc.* 734 P.2d 62, 64 (Alaska 1987).

Appellant Brown's Reply Memorandum
*Brown v. J.W. et. al.* 3:06-cv-00044 TMB
page 2

J.W. Creditors and Brown totaling $1.1 million, discounted that amount by 50% to reach $550,000, and then took 80% of that amount to reach the $440,000.  Mr. Von Gemmingen testified that he recalled Mr. Battley representing this to be the estimate of what the bankruptcy estate might recover from the Brown and JW Creditors claims against the receiver.  (Record, Volume Two, Transcript, page 129, lines 16-25 and page 130, lines 1-14.)  Mr. Battley testified that he said no such thing:

Q:   A million dollars compensatory for Brown, 100,000 compensatory for J.W.

A:   Okay, a million-one.

Q:   And then did you tell the parties meeting that you were going to discount that by 50 percent to $550,000?

A:   I don't ever believe making that statement.

(Record, Volume Two, Transcript, page 135, lines 13-18.)

The question before this Court on appeal is whether the Settlement Agreement was intended to include Brown's claim against the receiver.  Mr. Von Gemmingen's testimony about what he recalls Mr. Battley saying will not help this Court understand the meaning of the contract in light of Mr. Battley disavowal of having said anything about valuing, and discounting the value of,  Brown's claim.

JW Creditors also point out that the trustee believed the insurance claims were part of the bankruptcy estate (Appellee Brief at 5), but the trustee, Ken Battley, acknowledged that he had to defer to his attorney, John Siemers, on how the insurance claims came into the estate, "because I really didn't focus on the insurance claims." (Record, Volume Two, Transcript at 133, lines 24-25.)  His lawyer, John Siemers, did

focus on the insurance claims, and, at the November 9, 2005 evidentiary hearing, was very clear that the Brown claim was not included in the Settlement Agreement, except to the extend it came into the bankruptcy estate by operation of law (and then it would be a claim which the trustee "retained").  (Excerpts of Mr. Siemers' testimony are found at pages 5 through 9 of Appellant's Brief.)  The bankruptcy court concluded that the trustee had believed that the Brown claim had come into the estate by operation of law. (Record, Volume Two, DE 273, pages 13 and 18.)

There is no conflicting extrinsic evidence the assessment of which will help this court determine the meaning of the Settlement Agreement.  The bankruptcy court's decision interpreting the contract is reviewed de novo.

2. **The Settlement Agreement discusses insurance claims but does not identify Brown's claim and contains no assignment of Brown's claim to the trustee.**

JW Creditors argue that Brown attempted to "strip" from the bankruptcy trustee her claim against the receiver which was "expressly identified" in the Settlement Agreement.  (Appellee's Brief at 6.)  This is an incorrect statement.  Brown's claim is not identified in the Settlement Agreement.  In fact, it is undisputed that the attorneys who negotiated and drafted the Settlement Agreement did not intend that Brown's claim be included in the Settlement Agreement.  (John Siemers: "There's nothing in the text to say that – that there would be an assignment of that claim to the estate by Brown." Record, Volume Two, Transcript,  page 36, lines 1-2.)  Brown isn't stripping anything out of the Settlement Agreement.  She simply is confirming that what she has, and has

Appellant Brown's Reply Memorandum
*Brown v. J.W. et. al.* 3:06-cv-00044 TMB
page 4

never transferred or assigned to anyone, *is not in* the bankruptcy estate.

The bankruptcy court concluded that paragraph 10 of the Settlement Agreement specified that the trustee would "retain 'any insurance claims. . .'", and that this was

> . . .extremely broad language which expressly encompasses the insurance applying to Brown's claim, based upon the judgment held by her. The agreement says that the trustee will retain all insurance claims, including Brown's.

(Record, Volume Two, DE 273, p 13.) The problem with the bankruptcy court's conclusion is that the language of the agreement says that the trustee will *". . .retain* any insurance claims with respect to any insurance *given in favor of* Allvest. . . ." Brown has maintained from the outset that this paragraph included only whatever claims the trustee had with respect to insurance claims (for instance, his claim that the Brown claim was owned by the estate as a matter of law) and did not include whatever claims *Brown* had with respect to insurance claims.   An additional problem with the bankruptcy court's conclusion is that it ignored the testimony of  John Siemers, the bankruptcy trustee's lawyer, who wrote paragraph 10 of the Settlement Agreement. Mr. Siemers was very clear in his testimony at the evidentiary hearing that the Brown claims were *not* included in the Settlement Agreement and were *not* claims which were "retain[ed]" in paragraph 10 of the Settlement Agreement.

Q. All right. You intended that the trustee would retain whatever interest the estate had.

A. That's right, including any interest that the estate might've had by operation of law with respect to the Brown claim.

Q. But you did not intend to include in this a transfer of whatever claim Evelyn Brown had against the receiver as an assignment.

Appellant Brown's Reply Memorandum
*Brown v. J.W. et. al.* 3:06-cv-00044 TMB
page 5

> A. No. There's nothing in the text to say that -- that there would be an assignment of that claim to the estate by Brown.

(Record, Volume Two, Transcript page 35, lines 17-25 and page 36, lines 1-2.) (Further excerpts of Mr. Siemers' testimony are found at pages 5 through 9 of Appellant's Brief.)

> The parties reasonable expectation can be assessed by reviewing the language of the disputed provision, the language of the other provisions of the contract, relevant extrinsic evidence and case law interpreting similar provisions.

*Smalley v. Juneau Bldg Corp.* 493 P.2d 1296, 1305 (Alaska 1972) cited in *Harris v. Athna, Inc.* 107 P.3d 271, 274, n3 (Alaska 2005).

Cases which have interpreted the meaning of the word "retain" when used in context similar to that here have understood the word to mean something that was previously possessed, not something that would be added. In *In re Whigham* 195 B.R. 667, 672 (D.Ct. E D Mich 1996) it was found that "[t]he word "retain" imports a lien then in existence, not a lien to be created upon confirmation." In *McCall-Bey v. Franzen*, 777 F.2d 1178, 1182 (7th Cir. 1985) Judge Posner reasoned that

> Although the word "retain" suggests that the parties did not intend to confer a right to petition the court to enforce the agreement, but just intended not to waive any preexisting rights they may have had to petition for enforcement, the parties make no issue of this, and we shall therefore assume that the parties did intend that they would have a contractual right to petition the court to enforce the agreement.

The usual use of the word retain suggests that the trustee was not acquiring, in the Settlement Agreement, anything he did not already have. The testimony of the draftsman of the Agreement, without contradiction, supports the conclusion that Brown's claim was not included in the Settlement Agreement.

Appellant Brown's Reply Memorandum
*Brown v. J.W. et. al.* 3:06-cv-00044 TMB
page 6

**3.      Brown did not agree to look exclusively to the Settlement Agreement.**

JW Creditors point to paragraph 17 of the Settlement Agreement and the bankruptcy court's discussion of that paragraph and argue that Brown looked exclusively to the bankruptcy estate for her recovery. (Appellee's Brief at 8.) But paragraph 17 of the Settlement Agreement is simply a formula of how the funds which were, and are, in the bankruptcy estate will be distributed. The bankruptcy court noted that there was no provision allowing Brown to pursue her claim outside of the bankruptcy estate. But such a provision is not a requirement of any provision of the Bankruptcy Code. And there is no provision in the Settlement Agreement which prohibits Brown from pursing her claim against the receiver.

JW Creditors suggest that Brown stands to gain millions of dollars over her $2 million compensatory judgment if she can pursue her claim outside of bankruptcy. (Appellee's Brief at 8.) But that assertion fails to address the fact that the claim Brown asserts against the receiver is a claim against *a receiver*. A receiver can only disburse pro rata to the claims which are allowed the funds it holds. If the insurer could pay Brown's $2 million compensatory claim, it wouldn't be in receivership. The bankruptcy court understood this issue and asked at oral argument on Brown's Motion for Reconsideration, "do you know what the likelihood of a dividend for Brown or the estate in the pending insolvency proceeding?" In fact, Mr. Von Gemmingen told the court at that time that he expected the dividend to be about $445,000, not the $10 million he suggests to this Court Brown might recover. (Compare Appellee's Brief at 8 with Mr. Von Gemmingen's comments found in Record, Volume One, DE 11, page 14, line 18.)

Appellee's argument may boil down to this: Brown should have told the trustee and the creditors that she intended to retain her claim outside of bankruptcy. But Brown's response is simple and direct: No one asked her to give up her claim and absent that request, she didn't think her retention of her claim was an issue. When the tension is described this way, whose responsibility is it to document the understanding, Brown's or JW Creditors? The trustee was clear on this point – his counsel, who draft the Settlement Agreement, didn't think Brown was giving up her claim in the Settlement Agreement.

4.  **Brown is not looking to extrinsic evidence to 'go behind' the settlement agreement**

JW Creditors tells this Court that Brown asks it to look at the prior negotiations to determine that Brown's claim was not included in the Settlement Agreement. That is not what Brown proposed to the bankruptcy court. The bankruptcy court correctly noted that extrinsic evidence may always be considered to aid in the interpretation of a contract.

Brown does not think the contract is ambiguous. The trustee only retained in the contract what he had. There is no provision in the Settlement Agreement through which Brown's claim came into the bankruptcy estate.

If paragraph 10 of the Settlement Agreement is ambiguous, then the testimony elicited at the November 9, 2005 evidentiary hearing supports Brown's position that her claim was not included in the Settlement Agreement.  Mr. Siemers', Mr. Sneed's and

Mr. Bauermeister's testimony each was directed to what the Settlement Agreement meant, not what other agreements the parties might have had before the Settlement Agreement was drafted. Brown never asked the bankruptcy court to adopt an agreement which was not in the Settlement Agreement. She did ask the bankruptcy court to interpret the Settlement Agreement and particularly the meaning of paragraph 10 of that Agreement. In aid of that interpretation the court heard the following testimony:

- From Mr. Sneed: He aided in drafting the Settlement Agreement and it was never his understanding that Brown's claim was included in the Settlement Agreement. (Record, Volume Two, Transcript, page 10, lines 8-17.)

- From Mr. Seimers: He was the primary drafter of the Settlement Agreement and he never intended that Brown's claim would come into the bankruptcy estate through the Settlement Agreement. (Record, Volume Two, Transcript, page 25, lines 1-15.)

- From Mr. Bauermeister: No one told him they thought his claim was included in the Agreement and, more important, not one asked him that he assign Brown's claim to the trustee. (Record, Volume Two, Transcript, page 83, lines 23-25 and page 84, lines 1-5.)

- From Mr. Battley: He thought Brown's claim was in the estate, but he didn't know how it got there and he deferred to Mr. Siemers to explain how it got there. The bankruptcy court concluded that he thought the claim had come into the estate as a matter of law. (Record, Volume Two, Transcript, page 133, lines 22-25,

page 134, lines 23-25; Record Volume One, DE 287, pages 13 and 18.)

- From Mr. Von Gemmingen: Remembered Mr. Battley discussing the Brown claim coming into the estate, but Mr. Battley testified he never made the statements Mr. Von Gemmingen attributed to him. (Record, Volume Two, Transcript, page 130, line 10, page 135, line 18.)

- From Mr. Cook: Testified only that Brown never told him that she was retaining her claim. (Record, Volume Two, Transcript, page 99, lines 20-23.)

- From Mr. Syren: Testified that he simply assumed that the Brown claim was in the estate. (Record, Volume Two, Transcript, page 110, lines 8-25.)

Only Mr. Von Gemmingen's testimony is inconsistent with the plain-meaning of paragraph 10 – that the trustee was retaining what he had but not accumulating any claim he did not have. Mr. Von Gemmingen testified that Mr. Battley had discussed the Brown claim as though it was coming into the estate. But Mr. Battley testified that he said no such thing.

## Conclusion

The bankruptcy court found that the trustee believed the Brown claim came into the estate as a matter of law. However, the bankruptcy court concluded that the Brown claim did not come into the bankruptcy estate as a matter of law. Nevertheless, the bankruptcy court concluded that because the trustee *thought* the Brown claim had come into the bankruptcy court as a matter of law, it would find that it did come into the bankruptcy estate through a contractual conveyance of that interest in the Settlement

Agreement.

The Settlement Agreement and the extrinsic evidence elicited to interpret the meaning of that agreement established that Brown's claim did not come into the bankruptcy estate by assignment or any other means. The bankruptcy court's conclusion that Brown's claim came into the estate through the Settlement Agreement is not supported either by the plain meaning of the Settlement Agreement or the extrinsic evidence elicited to interpret the meaning of that agreement and should be reversed.

May 25, 2006.	Erik LeRoy, P.C.
Attorney for Appellant Evelyn Brown

*/s/ Erik LeRoy*

Erik LeRoy, P.C.
500 L St., Ste 302
Anchorage, Alaska 99501
(907) 277-2006
Alaska Bar Ass'n # 8310130

Certificate of Service

I certify that on May 25, 2006 a copy of this pleading was served on

Brett Von Gemmingen
637 W 3rd Ave.
Anchorage, AK 99501

Steve Shamburek
425 G St., Ste 630
Anchorage, AK 99501

by first class mail if an address in indicated above, or by electronic means through the ECF system as indicated on the Notice of Electronic Filing.

Erik LeRoy

*/s/ Erik LeRoy*

Appellant Brown's Reply Memorandum
*Brown v. J.W. et. al.* 3:06-cv-00044 TMB
page 11